**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

United States of America,   Civil No. 06-497 (DWF/SRN)

        Plaintiff,

v.   **MEMORANDUM**
   **OPINION AND ORDER**

Nash Sonibare and
Liberty Financial Group, Inc.,

        Defendants.

---

Michael R. Pahl, Esq., US Department of Justice, counsel for Plaintiff.

James C. Snyder, Sr., Esq., Snyder Law Office, PA, counsel for Defendants.

---

**Introduction**

The above-entitled matter came before the undersigned United States District Court Judge on March 7, 2006, pursuant to Plaintiff United States of America's (the "Government") Motion for a Temporary Restraining Order ("TRO") against Defendants Nash Sonibare and Liberty Financial Group, Inc. (collectively, the "Defendants"). Specifically, the Government requests a TRO to temporarily restrain Sonibare from preparing federal tax returns. In its Complaint (the "Complaint"), the Government requests injunctive relief under 26 U.S.C. §§ 7407, 7408, for violations of 26 U.S.C. §§ 6701, 6694, and 6695, and unlawful interference with the enforcement of the internal revenue laws.

Consistent with the Court's comments at the March 7, 2006 hearing, the Court grants the Government's motion for a TRO.[1]

**Background**

Defendant Nash Sonibare has prepared over 3,373 federal income tax returns since 2002. Sonibare has primarily prepared tax returns for recent immigrants from various African countries who have limited English-language skills and little knowledge of the complexities of the Internal Revenue Code. Sonibare has prepared federal income tax returns through Defendant Liberty Financial Group, a corporation of which Sonibare is the sole shareholder.

The Government contends that Sonibare has repeatedly prepared income tax returns containing false or inflated Schedule A expenses, false Schedule C businesses and false or inflated Schedule C business losses, false education credits, false dependency exemptions, and other fraudulent items. In 2002 and 2003, Internal Revenue Service ("IRS") special agents examined 30 of Sonibare's returns for the 2002 tax year, all of which contained one or more false or inflated Schedule A deductions for mortgage interest, charitable contributions, or personal property taxes, false or inflated Schedule C business losses, false or inflated education credits, false dependency exemptions, or false head of household status. In February and March 2003, the IRS assessed penalties against Sonibare for

---

1   The Court provisionally received additional exhibits that Defendants sought to introduce at the hearing. Because the Court finds that the additional exhibits do not change the Court's decision, the Court denies the Government's request to exclude the exhibits
(Footnote Continued on Next Page)

preparing federal income tax returns that understated the taxpayers' liabilities and contained unrealistic positions.

Since October 2004, the IRS has completed civil examinations of 88 returns prepared by Sonibare for the 2002–2004 tax years. All 88 returns examined by the IRS resulted in additional tax due. Based on the IRS's examinations of the 88 returns, Sonibare's customers have agreed to pay $233,364 in additional tax, or approximately $2,652 per return. The IRS continues to conduct examinations of returns prepared by Sonibare for the 2002–2004 tax years. The IRS estimates that Sonibare's fraudulent tax return preparation has caused over $8 million tax loss based on an estimated additional tax owed of $2,652 on the 3,373 returns prepared by Sonibare since 2002.

The Government contends that Sonibare repeatedly instructed his employees to sign returns that he had prepared. The Government also contends that Sonibare signed IRS forms stating that he is a certified public accountant ("CPA"), yet admitted during an interview with the IRS that he is not a CPA. In addition, the Government contends that Sonibare continued to prepare returns containing false claims for refunds after he was interviewed by IRS special agents as part of a criminal investigation.

The Government's allegations are largely undisputed. However, Sonibare asserts that the fact that 88 returns contained false information out of over 3,300 is statistically

---

(Footnote Continued From Previous Page)
from the record.

insignificant. Further, Sonibare asserts that his customers signed their tax returns, thereby vouching that the information in the returns was true.

## Discussion

**I.   Statutory Relief**

In relevant part, 26 U.S.C. § 7407 authorizes a court to enjoin any person who is an income tax return preparer from further acting as an income tax return preparer if the court finds that person has "continually or repeatedly engaged in any conduct described in subparagraphs (A) through (D) of [subsection (b)] and that an injunction prohibiting such conduct would not be sufficient to prevent such person's interference with the proper administration of this title." Subsection (b) provides that injunctive relief is appropriate if the court finds that an income tax return preparer has:

(A)   engaged in any conduct subject to penalty under section 6694 or 6695, or subject to any criminal penalty provided by this title,
(B)   misrepresented his eligibility to practice before the Internal Revenue Service, or otherwise misrepresented his experience or education as an income tax return preparer,
(C)   guaranteed the payment of any tax refund or the allowance of any tax credit, or
(D)   engaged in any other fraudulent or deceptive conduct which substantially interferes with the proper administration of the Internal Revenue laws

26 U.S.C. § 7407(b).[2] Section 7408 of 26 U.S.C. authorizes a court to enjoin persons who

---

2   In relevant part, 26 U.S.C.A. § 6694 assesses a monetary penalty to an income tax return preparer's understatement of a taxpayer's liability. In relevant part, 26 U.S.C. § 6695 assesses additional penalties for various violations of the disclosure and record-keeping provisions of the statute.

have engaged in conduct subject to penalty under 26 U.S.C. § 6701, in order to prevent the recurrence of such conduct.[3]  Thus, in order to issue an injunction, the court must find that the defendant is a tax preparer, the conduct complained of must fall within one of the four areas of proscribed conduct in Section 7407(b)(1), and that an injunction is appropriate to prevent the recurrence of the proscribed conduct. *United States v. Ernst & Whinney*, 735 F.2d 1296, 1303 (11th Cir. 1984).

The Court finds that the Government has proved each element by a preponderance of the evidence. First, Sonibare admits that he is a federal income tax return preparer. Second, the Court finds that Sonibare has engaged in proscribed conduct. Here, the facts show that Sonibare has repeatedly prepared federal income tax returns that contain false or inflated Schedule A expenses, false Schedule C businesses and false or inflated Schedule C business losses, false education credits, false dependency exemptions, and other fraudulent items. These false representations have already caused $233,264 in tax loss and may result in as much as $8 million estimated tax loss. The evidence further establishes that Sonibare knew that these false statements would result in the understatement of tax liability.

Additionally, it is undisputed that Sonibare falsely stated that he is a CPA. The evidence also establishes that Sonibare continually and repeatedly failed to sign returns he has prepared. The evidence further shows that Sonibare has engaged in other fraudulent or

---

3   In relevant part, 26 U.S.C. § 6701 prohibits any person from aiding or assisting in the preparation of a tax return when the person knows the return will result in the understatement of tax liability.

deceptive conduct substantially interfering with the proper administration of the tax laws, including offering one customer blank Goodwill receipts so that he could substantiate items given to other charities. Finally, the Court rejects Sonibare's assertion that the Government's evidence is statistically weak. Although, only .03% of the 3,300 federal tax returns that Sonibare filed have resulted in additional tax due, 100% of the 88 tax returns that the Government has audited have resulted in additional tax due. Therefore, it is misleading to suggest that the 3,212 tax returns that have yet to be audited will not result in additional tax due.

Third, the Court finds that an injunction is appropriate to prevent the recurrence of proscribed conduct. The Government estimates that Sonibare will prepare an estimated 1,124 tax returns for the 2005 tax filing season. Given that every one of the 88 tax returns that the Government has audited to date resulted in additional tax due, the Court finds that it is likely that Sonibare's current tax returns would also result in additional tax due. Additionally, the evidence shows that Sonibare continued to file federal income tax returns after he was interviewed by IRS special agents and while his returns were under investigation by the IRS. The evidence also shows that Sonibare falsely claimed to the IRS and his customers that he was a CPA. Accordingly, the Court finds that an injunction is necessary to prevent Sonibare from continuing to prepare fraudulent tax returns during the current tax filing season.

**II.     Equitable Factors**

Additionally, the Court finds that equitable factors also warrant the issuance of a

TRO. A temporary restraining order may be granted only if the moving party can demonstrate: (1) a likelihood of success on the merits; (2) that the movant will suffer irreparable harm absent the restraining order; (3) that the balance of harms favors the movant; and (4) that the public interest favors the movant. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). None of the factors by itself is determinative; rather, in each case the factors must be balanced to determine whether they tilt toward or away from granting injunctive relief. *West Publ'g Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1222 (8th Cir. 1986). The party requesting the injunctive relief bears the "complete burden" of proving all the factors listed above. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).

The Court finds that the Government has established a substantial probability of success on the merits of its claim that Sonibare be permanently barred from preparing federal income tax returns. Here, the evidence shows that Sonibare has repeatedly filed federal income tax returns containing false items, resulting in an estimated $8 million tax loss. Further, the breadth of Sonibare's violations of the Internal Revenue Code warrant issuing the injunction. Thus, the Court finds that the first *Dataphase* factor is satisfied.

Next, the Court finds that the Government has met its burden of establishing that irreparable harm will result if injunctive relief is not granted and that such harm will not be compensable by money damages. *See Packard Elevator v. I.C.C.*, 782 F.2d 112, 115 (8th Cir. 1986). The Government cites *Baker Elec. Co-op, Inc. v. Chaske*, 28 F.3d 1466, 1472–73 (8th Cir. 1994), for the proposition that this *Dataphase* factor is satisfied by showing

that the movant has no adequate remedy at law. The Government asserts that it has no adequate remedy at law because, absent a TRO, the Government cannot bar Sonibare from preparing federal income tax returns during this filing season. The Court agrees and finds that the second *Dataphase* factor is met.

The Court also finds that the harm to the Government in the absence of injunctive relief outweighs the potential harm that granting injunctive relief may cause to Sonibare. *See Dataphase*, 640 F.2d at 114. The Court agrees with the Government's assertion that Sonibare cannot claim any harm from having his business shut down when his business is primarily devoted to preparing fraudulent tax returns. Here, the issuance of a TRO will end Sonibare's current illegal activity, and therefore cannot be deemed harmful to Sonibare. Thus, the Court finds that the third *Dataphase* factor is satisfied.

Finally, the Court finds that granting injunctive relief serves the public's interest. *See Dataphase*, 640 F.2d at 114. The Court finds that protecting the public from fraudulent return preparers serves the public's interest. Additionally, the public has already expended considerable resources as a result of the IRS's investigation of 88 of Sonibare's customers' returns. Further, without a TRO, the public will likely incur substantial costs due to the IRS's continuing need to audit Sonibare's customers. Accordingly, the Court finds that the Government has met its burden under the *Dataphase* factors and that a TRO is therefore warranted.

## Conclusion

In accordance with the Court's comments at the March 7, 2006 hearing, **IT IS**

**HEREBY ORDERED THAT:**

1. Plaintiff's Motion for a Temporary Restraining Order (Doc. No. 3) is **GRANTED**.

2. The Court orders that Sonibare and his agents, servants, employees, independent contractors, and those persons in active concert or participation with him who receive actual notice of this Order are temporarily restrained and enjoined from:

   a. Preparing or assisting in the preparation of any federal tax return, amended return, or claim for refund, for any person or entity other than himself (or his spouse, if filing a joint return);

   b. Engaging in conduct subject to penalty under 26 U.S.C. § 6694, including preparing tax returns or claims for refund that include unrealistic or frivolous positions;

   c. Engaging in conduct subject to penalty under 26 U.S.C. § 6701, including preparing or assisting in the preparation of a document related to a matter material to the internal revenue laws that includes a position that he knows will (if so used) result in an understatement of another person's tax liability;

   d. Engaging in conduct subject to penalty under 26 U.S.C. § 6695, including failing to sign returns he prepares;

   e. Engaging in any conduct that interferes with the proper administration and enforcement of the internal revenue laws;

    f. Providing any tax advice or services to any person or entity, including providing tax consulting services to customers or representing customers before the IRS;

    g. Misrepresenting his credentials as a federal-income-tax return preparer, in violation of 26 U.S.C. § 7402;

    h. Instructing, advising, or assisting taxpayers to understate their federal income tax liabilities; and

    i. Misrepresenting any of the terms of this Order.

  3. Sonibare shall post notice at his place of business indicating that the Court has issued an order, prohibiting Sonibare from preparing federal tax returns until further order of the Court.

  4. Sonibare shall return incomplete tax returns to customers, with explanation that the Court has prohibited him from completing such tax returns.

5. This temporary restraining order shall not terminate until further order of the Court.

6. The parties shall contact Lowell Lindquist, the Court's Calendar Clerk, at 651-848-1296 if either party wishes to schedule a date for an evidentiary hearing. If the parties are unable to agree on discovery issues or on a briefing calendar, the parties shall contact Beverly Riches, Magistrate Judge Susan Richard Nelson's Calendar Clerk, at 612-664-5490.

Dated: March 10, 2006          s/Donovan W. Frank
                               DONOVAN W. FRANK
                               Judge of United States District Court