**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| United States of America, | Civil No. 06-497 (DWF/SRN) |
| Plaintiff, | |
| v. | **FINDINGS OF FACT, CONCLUSIONS OF LAW, ORDER FOR CONVICTION OF CRIMINAL CONTEMPT, AND MEMORANDUM** |
| Nash Sonibare and Liberty Financial Group, Inc., | |
| Defendants. | |

Michael R. Pahl, Esq., U.S. Department of Justice, Tax Division, counsel for Plaintiff.

James C. Snyder, Sr., Esq., Snyder Law Office, PA, counsel for Defendant Nash Sonibare.

This matter came before the undersigned United States District Judge as a Court trial held on April 7, May 7, and May 8, 2008.  The matter was tried before the Court instead of a jury because in its Order filed March 27, 2006, at paragraph 6, the Court found that if Defendant Nash Sonibare was found guilty of criminal contempt, the sentence that he would be subject to would not exceed six months in prison and/or up to a $10,000 fine.

The matter is before the Court pursuant to Title 18 U.S.C. § 401(3) and Rule 42(a) of the Federal Rules of Criminal Procedure addressing criminal contempt.  The United States asserts that Sonibare is guilty of criminal contempt because he violated the

preliminary injunction entered by this Court on March 10, 2006, and the permanent injunction entered on February 5, 2007. Specifically, the United States asserts that Sonibare violated the injunctions by preparing the federal tax returns of six former customers at his Little Canada and Roseville, Minnesota offices.

Sonibare entered a plea of not guilty and denies all charges. Moreover, Sonibare has asserted that not only is he not guilty of the allegations of criminal contempt, but also that the investigation and prosecution itself is "racist" and an example of racial profiling. Further, Sonibare asserted prior to and during the trial that he has been "entrapped and harassed" without justification. The United States denies these allegations. A total of 16 witnesses, including Sonibare, testified in the case.

Based upon the presentations of counsel, the testimony and exhibits received, and the Court being otherwise duly advised in the premises, the Court hereby makes the following:

## FINDINGS OF FACT

1. On March 10, 2006, the Court entered a preliminary injunction that prohibited Sonibare from "preparing or assisting in the preparation of any federal tax return, amended return, or claim for refund, for any person or entity other than himself." (Doc. No. 19 at 9.)

2. Further, in the Court's Order granting a temporary restraining order, which was filed on March 10, 2006, the Court directed that "Sonibare shall post notice at his

place of business indicating that the Court has issued an order, prohibiting Sonibare from preparing federal tax returns until further order of the Court." (*Id*. at 10.)

3.  The Court further ordered in the March 10, 2006 temporary restraining order that "Sonibare shall return incomplete tax returns to customers, with explanation that the Court has prohibited him from completing such tax returns." (*Id*.)

4.  The Court also granted a permanent injunction to the United States against Sonibare individually and doing business as Liberty Financial Group, Inc., on February 5, 2007. (Doc. No. 57.)

At that time, the Court entered the following Order:

> 2.  The Court orders that Sonibare and his agents, servants, employees, independent contractors, and those persons in active concert or participation with him who receive actual notice of this Order are permanently enjoined from:
>
>> a.  Preparing or assisting in the preparation of any federal tax return, amended return, or claim for refund, for any person or entity other than himself (or his spouse, if filing a joint return);
>
> * * *
>
> 3.  The Court orders Sonibare to mail, at his own expense, a copy of this injunction order within 14 days of the entry of this Order to all persons and entities for whom he prepared any federal income tax returns, amended returns, refund claim, or other federal tax-related documents since January 1, 2000. Sonibare shall file a certificate of compliance, signed under penalty of perjury, with the Court within 40 days of the entry of this Order.
>
> 4.  The Court further orders Sonibare to turn over to the United States within 15 days of the entry of this Order a complete list of all persons for whom he prepared (or helped to prepare) any federal tax return, amended return, or refund claim since January 1, 2000, such list to include

> each such person's name, address, phone number, e-mail address, social security number or employer identification number, and the tax period(s) to which or for which such return, amended return, or refund claim relates. The list shall include all customers whose returns Sonibare helped to prepare, even if those returns were filed listing someone else as preparer or listing someone else's social security or employer identification number as preparer, or listing someone else's electronic filing number.

(*Id.* at 12-14.)

**Testimony of Jacob Mills**

5. Jacob Mills, whose native country is Ghana, testified that "I have never done my own taxes." Jacob Mills went to Sonibare's office on or about April 1, 2006, and found it to be closed. At that time, Sonibare gave Jacob Mills directions to his new office on Rice Street after Mr. Mills called him.

6. Sonibare failed to inform Mr. Mills that a federal judge had closed down Sonibare's tax preparation business and that Sonibare was prohibited from doing tax returns.

7. Sonibare, in violation of the Court's March 10, 2006 Order, prepared Jacob Mills' tax return after Mr. Mills gave him the necessary documents so that Sonibare could do so.

8. The 2005 tax return of Jacob and Yvonne Mills was introduced as Government Exhibit 7. Jacob Mills testified that Sonibare had done his tax returns in prior years and that Sonibare also did his 2005 tax return, even though "Self-Prepared" was stamped on the bottom of his tax return. Jacob Mills stated that he never paid

attention or saw the "Self-Prepared" stamp and that he did not complete the tax return and did not stamp "Self-Prepared" on it.

9. Jacob Mills testified that he met with no one except Sonibare and that he issued a check dated April 8, 2006, for $250, written to "Nash" because Sonibare told him he could write Nash on the check. Jacob Mills wrote the check and gave it to Sonibare in his office on or about April 1, 2006.

10. The Court finds the testimony of Jacob Mills truthful.

11. The Court further finds that, based on the credible testimony of Jacob Mills and the record before this Court, Sonibare, or someone on Sonibare's behalf or direction, stamped "Self-Prepared" on the tax return of Jacob and Yvonne Mills without their knowledge or consent.

12. The Court specifically rejects Sonibare's allegation that Jacob Mills' testimony was not truthful and that the reason that it was not truthful was that Jacob Mills "lied to avoid bigamy charges."

**Testimony of Priscila L. Karyongi**

13. Priscila L. Karyongi's 2005 Federal U.S. Individual Income Tax Return was received as Government Exhibit 2.

14. Priscila Karyongi testified that Sonibare prepared her taxes for the tax year 2005, as he had in previous years. Priscila Karyongi called Sonibare on or about April 13, 2006, to get her taxes done. Sonibare informed her at that time that he was in the process of moving to another office.

15. Sonibare did not at any time tell Priscila Karyongi that he was prohibited from preparing individual tax returns. Priscila Karyongi had an appointment with Sonibare on April 13, 2006, at 2:30 p.m. At that time, Sonibare had a computer and completed the taxes, according to Priscila Karyongi, as he always did, in 20 to 30 minutes. She presented a check to Sonibare for $150, which was never cashed, based upon the record before the Court.

16. The Court finds that Priscila Karyongi's testimony was truthful. Consequently, the Court finds and concludes that Sonibare prepared Priscila Karyongi's tax return and stamped, or directed someone to stamp "Self-Prepared" on her tax return.

**Testimony of Tommy L. Giles**

17. Ms. Giles testified that she met Sonibare some years prior to tax year 2005 and that he had done her taxes in the past at his office on University Avenue. For the tax year 2005, she dropped off her taxes at a different location. Her tax return was stamped "Self-Prepared," even though the evidence establishes that in prior years she had not done her own taxes. While her testimony was unclear as to all of the specific circumstances around drop off and pick up, and who may have been involved with or without the direction of Sonibare in the preparation of her tax return, consistent with Ms. Karyongi and Mr. Mills, Ms. Giles had not done her tax returns the prior years because Sonibare had done them. Tommy L. Giles did not stamp "Self-Prepared," or direct or consent to anyone stamping "Self-Prepared," on the tax return. Moreover, even if the testimony of Ms. Giles was unclear as to the specific mechanics and circumstances of what individuals

were involved in addition to Sonibare preparing her tax return, it is clear that Sonibare had not told Ms. Giles directly or indirectly that he was prohibited from doing tax returns.

**Testimony of Curtis Jones**

18.     Curtis Jones testified that he met Sonibare seven or eight years prior to tax year 2005.  Mr. Jones and his wife, Julia Jones, went to Sonibare's office at the Little Canada location and met with Sonibare in his office at a desk.  This meeting occurred in April 2006.  Admittedly, Mr. Jones was confused at times with respect to the specific facts and dates surrounding the meeting with Sonibare at the Little Canada office.  Government Exhibit 34 was received as a photograph of the Little Canada location.

19.     Curtis Jones was referred by Sonibare to another individual located at the office building set forth in Government Exhibit 35 that was received into evidence.  The individual that Sonibare referred Curtis Jones to completed his taxes.  Government Exhibit 9 was received as the tax return of Curtis and Julia Jones.  Mr. Jones post-dated the check to April 22, 2006.  The tax return was dated April 14, 2006, and stamped "Self-Prepared."

Government Exhibit 10 was received as a check written to Liberty Financial Group in the amount of $200.

The Court finds that neither Curtis nor Julia Jones completed their 2005 individual tax return, yet it was stamped "Self-Prepared."  The Court further finds that Mr. Jones' testimony was truthful when he testified that he never saw "Self-Prepared" at the bottom of his tax return and that he did not do his own taxes in 2005 or any previous year.

20.     The court further finds that, based on the credible testimony of Curtis Jones and the record before this Court, Sonibare, or someone on Sonibare's behalf or direction, stamped "Self-Prepared" on the tax return of Curtis and Julia Jones without their knowledge or consent.

21.     At no time did Sonibare tell Curtis Jones that Sonibare was prohibited from doing taxes.

**Testimony of IRS Revenue Officer Nona Boshart**

22.     Agent Boshart has been involved in the investigation of Sonibare for approximately two and one-half years, beginning when Sonibare had an office at 821 University Avenue, located in the Griggs Midway Building in St. Paul, Minnesota. Agent Boshart testified that, contrary to the Court's Order of March 10, 2006, requiring Sonibare to place notice at his place of business indicating that the Court had issued an order prohibiting him from preparing federal tax returns, no such notice was posted on either Tuesday, Wednesday, Thursday, or Friday of the week following the Court's Order. It should be noted that Sonibare testified that although he did not put a notice up stating that he was prohibited from doing tax returns, he asserted that he did put a notice up stating what he could do. Regardless, this sign did not comply with the Court's Order.

**Testimony of Wosenyeleh Wolde**

23. Wosenyeleh Wolde testified on behalf of Sonibare, indicating that he and his brother were fifty/fifty owners of Sosem Capital Group. Mr. Wolde testified that in 2006 Sonibare approached him and told him that Sonibare could no longer do tax returns, but starting for the tax year 2006, prepared in 2007, Mr. Wolde began doing tax returns. Mr. Wolde acknowledged that in prior years Sonibare had prepared Mr. Wolde's taxes. First, the Court observes and so finds that the testimony of Mr. Wolde post-dates the witnesses called by the United States with respect to the preparation of their 2005 tax returns in early 2006.

24. The Court specifically finds that when Mr. Wolde testified, "I have never received a customer from Nash Sonibare," that he was not being truthful with the Court, even though it has no bearing on the Court's evaluation of the tax preparation evidence of the witnesses noted above.

**Testimony of Adeolu Akinsuyi**

25. The 2005 individual tax return of Adeolu Akinsuyi and his wife, Omobolanle, was received as Government Exhibit 14. The Akinsuyis' tax return was stamped "Non-Paid Preparer," although Mr. Akinsuyi admitted that Sonibare prepared his taxes prior to 2005. He stated that for tax year 2005, his brother prepared his tax return.

26. Sonibare failed to inform Mr. Akinsuyi that Sonibare was prohibited from doing tax returns. Mr. Akinsuyi gave no explanation for why his brother suddenly started to do his tax returns for the tax year 2005.

**Testimony of Randall Gantry**

27.    Randall Gantry was called by Sonibare. Mr. Gantry testified that up until 2005, Sonibare had done his taxes, including his taxes in his capacity as a small business owner. Mr. Gantry's tax return was stamped "Self-Prepared." Mr. Gantry testified that even though Sonibare had done his taxes in previous years, he prepared his own taxes in 2005.

28.    Mr. Gantry's testimony was not credible. Mr. Gantry, like other witnesses in this case, needed assistance in doing his tax returns in prior years, yet suddenly the "Self-Prepared" stamp appeared on his 2005 tax returns.

**Testimony of Nash Sonibare**

29.    Nash Sonibare testified on his own behalf. Sonibare denied preparing in any manner the taxes of Jacob Mills, Priscila L. Karyongi, Tommy Lee Giles, Curtis Jones, and any other individuals in the tax year 2005, prepared in early 2006.

30.    Furthermore, Sonibare alleged that he had been entrapped and there were racial overtones, racism, and racial profiling involved in the investigation, as well as harassment, since 2003.

31.    Sonibare admitted that he did not put up a sign saying that he was prohibited from doing taxes, but that he did put up a sign stating what he could do. The sign was received as Defendant's Exhibit 8.

32.    The Court has previously found that the sign did not comply with the Court's order. Sonibare declined to put up a sign that stated that he was specifically

prohibited from doing tax preparation work.  In failing to do so, he violated the Court's Order of March 10, 2006, as noted in paragraph 2 above.

33.     Sonibare denied having any responsibility for the presence of a stamp reading "Self-Prepared" on the tax forms for the individuals who testified at the trial.  The Court does not find Sonibare's testimony credible in light of the record before the Court.

34.     That any conclusion of law that can be deemed a finding of fact is incorporated herein as such.

Based upon the above findings of fact, the Court now makes its:

### CONCLUSIONS OF LAW

1.      Based upon the findings of fact above, and the Court's evaluation of the evidence, including the credibility of each of the witnesses, including the testimony of Sonibare, and all of the circumstantial inferences therefrom, the Court concludes that Sonibare prepared the tax return of Jacob and Yvonne Mills in violation of the Court's preliminary injunction order entered on March 10, 2006, prohibiting the preparation of federal income tax returns at his Little Canada and Roseville offices and is therefore guilty of criminal contempt of this Court pursuant to Title 18 U.S.C. § 401(3) and Rule 42(a) of the Federal Rules of Criminal Procedure.

2.      Based upon the findings of fact above, and the Court's evaluation of the evidence, including the credibility of each of the witnesses, including the testimony of Sonibare, and all of the circumstantial inferences therefrom, the Court concludes that Sonibare prepared the tax return of Priscila L. Karyongi in violation of the Court's

preliminary injunction order entered on March 10, 2006, prohibiting the preparation of federal income tax returns, and is therefore guilty of criminal contempt of this Court pursuant to Title 18 U.S.C. § 401(3) and Rule 42(a) of the Federal Rules of Criminal Procedure.

      3.     Based upon the findings of fact above, and the Court's evaluation of the evidence, including the credibility of each of the witnesses, the testimony of Sonibare, and all of the circumstantial inferences therefrom, the Court concludes that Sonibare either prepared the tax return of Curtis Jones or referred Curtis Jones to the individuals noted in paragraphs 19 and 20 of the Findings of Fact above and then directed that the tax return be completed and the stamp "Self-Prepared" be placed on the bottom of the tax return, even though neither Mr. Jones nor Julia Jones completed the tax return, in violation of the Court's preliminary injunction order entered on March 10, 2006, prohibiting the preparation of federal income tax returns, and is therefore guilty of criminal contempt of this Court pursuant to Title 18 U.S.C. § 401(3) and Rule 42(a) of the Federal Rules of Criminal Procedure.

      4.     Based upon the findings of fact above, and the Court's evaluation of the evidence, including the credibility of each of the witnesses, including the testimony of Sonibare, and all of the circumstantial inferences therefrom, the Court concludes that Sonibare refused to post a notice in violation of the Court's Order at his place or places of business "indicating that the Court had issued an order prohibiting Sonibare from preparing federal tax returns" and is therefore guilty of criminal contempt of this Court

pursuant to Title 18 U.S.C. § 401(3) and Rule 42(a) of the Federal Rules of Criminal Procedure.

  5. That any finding of fact which is deemed a conclusion of law is incorporated herein as such.

  Based upon the above findings of fact and conclusions of law, this Court enters the following:

## ORDER

  1. That pursuant to the above findings of fact and conclusions of law, the Court hereby finds Sonibare guilty of four separate instances of criminal contempt of the orders of this Court as follows:

    a. Guilty of criminal contempt of court in the preparation of Jacob Mills' 2005 tax return as set forth in paragraph 1 of the Conclusions of Law.

    b. Guilty of criminal contempt of court in the preparation of Priscila L. Karyongi's 2005 tax return as set forth in paragraph 2 of the Conclusions of Law.

    c. Guilty of criminal contempt of court in the preparation of Curtis Jones' 2005 tax return or directing that the tax return be prepared by another individual, as set forth in paragraph 3 of the Conclusions of Law.

    d. Guilty of criminal contempt of court in refusing to post a notice in violation of the Court's Order at his place or places of business

"indicating that the Court had issued an order prohibiting Sonibare from preparing federal tax returns."

2.    Accordingly, the Court respectfully directs the Clerk of Court to enter a conviction consistent with the findings and conclusions of this Court.

3.    The Court will set a sentencing hearing consistent with the Memorandum that follows.

Dated: August 4, 2008                  s/Donovan W. Frank
DONOVAN W. FRANK
Judge of United States District Court

**MEMORANDUM**

**Factual Background**

The Court incorporates into this memorandum the findings and conclusions it has previously reached during the prior hearings of this Court. Those Orders entered on March 10, 2006, March 27, 2006, and February 5, 2007, set forth in some detail the history of the case, the relationship of the Internal Revenue Service with Sonibare, and the activities of Sonibare.

The direct and circumstantial evidence in this case establishes beyond a reasonable doubt that Sonibare prepared the tax returns of numerous individuals or, on a direct referral basis, directed that the tax returns be done and then, by whatever means, directed that the stamp "Self-Prepared" was placed on the end of the tax return. By what computer program or method it was placed, when it was placed, and what individual

placed it there (if not directly done by Sonibare) does not create any reasonable doubt in this case, given the circumstantial evidence surrounding the relationship of each client with Sonibare, the timing of when the tax returns were done, and, of course, the explanation of the clients themselves.

In each case where the Court has found Sonibare guilty of criminal contempt of this Court's Order by preparing the tax returns or directing their preparation, each client had Sonibare prepare their tax returns in prior years, and each client met with Sonibare in early 2006 just as they had in prior years.

The fact that someone, after the fact, either before or after their signatures, stamped "Self-Prepared" on the returns not only confirms the culpability of Sonibare, but it exacerbates the unfortunate circumstances around a simple tax return by the fraudulent placement of "Self-Prepared" on the document.

The evidence presented to this Court, both circumstantial and direct, compels the conclusion that Sonibare either prepared these returns and stamped "Self-Prepared" himself, or prepared the returns and directed someone else to stamp "Self-Prepared" on the returns.

Moreover, neither the United States nor Sonibare should misconstrue the findings of this Court that relate only to three individuals, in addition to Sonibare's refusal to post the court-ordered notice at his place of business.  Some of the witnesses called by the United States were confused and perhaps had a difficult time remembering things, but were truthful, in the Court's assessment of their credibility.  The Court nonetheless

declined to return a verdict on all six of the tax returns that were the focus of the United States's case. Even though it is more likely than not that Sonibare did prepare the other individuals' returns as well, the Court declines to so find by proof beyond a reasonable doubt.

Some of the defense witnesses may have attempted to do the right thing because they were convinced by Sonibare that this was a racist investigation or some type of harassment by the United States against Sonibare. But their testimony that they suddenly started doing their own taxes in tax year 2005 when Sonibare had done them in the past was not credible, regardless of their motive in taking the witness stand. And notably, the testimony regarding the five-vehicle caravan where former clients of Sonibare were having a total stranger, that each had met for the first time, do their taxes, was also entirely implausible.

**Sonibare's Assertions of Racism, Harassment, Entrapment, and Racial Profiling**

The Court acknowledges that it is possible that Sonibare may truly believe in his own mind that he has been the victim of either racism, harassment, entrapment, or racial profiling. If so, perhaps it would explain how strongly he voiced these opinions in the courtroom and, more significantly, perhaps it explains why he feels justified in violating the orders of this Court, such violations which the United States has proven by proof beyond a reasonable doubt. There is no reasonable doubt that Sonibare either prepared the tax returns in question, set forth in the Court's Order, or directed the preparation of the returns. Yet, he denied all such conduct, under oath, to this Court in all respects. That

testimony was not truthful. It is the Court's view that Sonibare knows that he was not truthful. The Court does not have to read a witness's mind, including the defendant's, to reach a fair, just, and proper verdict. Consequently, whether Sonibare truly believes that he has been a victim at the hands of the government, or, with some type of premeditation, fabricated some of the testimony before the Court, the result is the same: the United States proved by proof beyond a reasonable doubt that Sonibare is in criminal contempt of the Orders of this Court. Sadly, such contempt was easily avoidable, especially if the tax preparation business was such a minor part of his income and business, as alleged by his defense.

It is truly unfortunate when a citizen of this country−whether new or old−feels that he or she has been a victim of racism and harassment, or otherwise has been targeted by an agency of the federal government. That is a sad day for all citizens in the United States of America. The Court acknowledges that it has a duty and responsibility, consistent with its oath, to be vigilant and to watch for racism, harassment, entrapment, racial profiling, and, frankly, any kind of discrimination. Equal justice for all, equal access to the justice system for all, as well as equal treatment for all is what the Constitution entitles every person to in the United States.

However, contrary to Sonibare's assertions, the Court does not see any basis upon which it can conclude that what happened here was the result of Sonibare being the victim of racism, harassment, entrapment, racial profiling, or any other form of harassment. The Court does not believe that such is the case on the record before it. For

the reasons stated, the Court has concluded that Sonibare is guilty of criminal contempt of this Court.

**Sentencing**

By the Order of the Court, the Court's calendar clerk, Gina Olsen, will contact counsel for each party to set a sentencing date. The Court has not ordered a Presentence Report. The Court is prepared to proceed with short argument at a sentencing hearing to address what a reasonable and appropriate sentence would be. In the event either party wishes to submit a memorandum addressing any sentencing issue, it shall be submitted five days prior to the sentencing date.

D.W.F.